**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-24295-CIV-ALTONAGA/Simonton**

**ELIZABETH MCLEAN**,

     Plaintiff,

vs.

**CARNIVAL CORPORATION**,

     Defendant.

_____/

**ORDER**

     **THIS CAUSE** comes before the Court on Defendant, Carnival Corporation's ("Carnival['s]") Amended Motion to Dismiss ("Motion") [ECF No. 19-1], filed on February 8, 2013.  Plaintiff, Elizabeth McLean ("McLean"), as Personal Representative of the Estate of Sydney Aronowitz ("Decedent"), filed a Complaint [ECF No. 1] on December 5, 2012.  The Complaint contains one negligence count (*see id.*), which Carnival moves to dismiss.  (*See* Mot. 14).  Plaintiff filed an Amended Response . . . ("Response") [ECF No. 25] on February 14, 2013, to which Carnival replied ("Reply") [ECF No. 29] on February 19, 2013.  The undersigned has carefully considered the parties' written submissions and applicable law.

**I. BACKGROUND**[1]

     This case involves a dispute between Carnival and Decedent's personal representative, McLean, over an accident that occurred while Decedent disembarked a cruise ship.  Carnival is a cruise line doing business in Miami-Dade County, Florida.  (*See* Compl. ¶ 4).  McLean is a

---

[1]  The facts are taken from the Complaint, are presented in the light most favorable to Plaintiff, and are taken as true.

resident of Hartford, Connecticut.  (*See id.* ¶ 3).  The events underlying the dispute, as alleged by McLean, are as follows.

Decedent was a passenger on the cruise ship Carnival Splendor ("Splendor"), which Carnival owns and operates.  (*See id.* ¶¶ 9–10).  On December 8, 2011, the Splendor ported at Puerto Vallarta, Mexico.  (*See id.* ¶¶ 7, 10).  In the process of disembarking the Splendor, Decedent "attempted to maneuver his electric scooter up the gangway."  (*Id.* ¶ 10).  Decedent's scooter "tipped backwards and fell on top of him, causing serious, debilitating, and permanent injuries."  (*Id.*).  The Splendor's personnel arrived and "righted" Decedent's scooter while he was still in it.  (*Id.*).  Although Decedent struck his head during the accident and was unconscious, the Splendor's personnel failed to use any "cervical spine precautions" or immobilize Decedent's head.  (*Id.*).

Decedent was taken to the Splendor's medical facility.  (*See id.*).  "Despite obvious signs that [Decedent] had injured his back in the fall, no x-rays were taken" as the x-ray machine was not working properly.  (*Id.*).  On the following day, December 9, 2011, the medical staff administered an ultrasound which indicated a possible fracture of Decedent's spine.  (*See id.*).  Decedent was not evacuated from the Splendor and remained in "excruciating pain" on board until December 11, 2011, when the vessel reached Los Angeles, California.  (*Id.*).  Decedent subsequently sought medical care on shore and learned he had a fractured spine and would require surgery.  (*See id.*).  "As a result of [Decedent's] injury, and his subsequent medical treatment, his overall health dramatically declined and he died on April 29, 2012."  (*Id.*).

In the sole Count of the Complaint, McLean sues Carnival for negligence claiming Carnival "failed to provide a safe gangway for passengers with disabilities to exit the vessel at Puerto Vallarta, Mexico."  (*Id.*).  McLean asserts Carnival owed Decedent a "duty to exercise

reasonable care" and "reasonable care under the circumstances" for his safety.  (*Id.* ¶ 12) (citations and internal quotation marks omitted).  Additionally, McLean alleges Carnival owed Decedent a duty to "warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit."  (*Id.*) (citation and internal quotation marks omitted).

McLean alleges Carnival breached its duties to Decedent in various ways.  For example, McLean alleges "[t]he gangway was established in such a way that it was at a very steep incline and extremely dangerous."  (*Id.* ¶ 10).  "Further, Carnival should have had personnel available to assist passengers with special needs in exiting the ship."  (*Id.*).  McLean also alleges Carnival failed to modify, inspect, and/or properly maintain the gangway; failed to warn passengers of the dangerous condition; failed to provide an alternative method for disembarkation; failed to comply with applicable industry standards, statutes, and/or regulations; failed to hire and retain qualified and properly trained crewmen; failed to develop relevant policies or procedures; and committed other failures.  (*See id.* ¶ 13).  McLean alleges Carnival either created the dangerous condition or had actual or constructive knowledge of its existence.  (*See id.* ¶ 15).

Finally, McLean asserts Decedent suffered "bodily injury resulting [in] pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment" as a result of Carnival's negligence (*id.* ¶ 20), and requests damages for the aforementioned as well as for "loss of important bodily functions, significant and permanent scarring or disfigurement, and loss of life" (*id.* 9).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### III. DISCUSSION

Carnival argues the Complaint fails to state a claim for relief under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).  (*See* Mot. 4).  Specifically, Carnival contends McLean fails to plead facts sufficient to demonstrate the Pennsylvania Rule[2] applies, Carnival had notice of any alleged defect in the gangway, or Carnival breached any duty to Decedent.  (*See id.* 4–9). Additionally, Carnival asserts McLean's "negligent method of operation" allegation is not a cognizable claim under federal maritime law (*see id.* 9–10), and McLean fails to allege facts

---

[2] The Pennsylvania Rule "serves to allocate the burden of proof for showing causation by transferring it to the party in violation of a statute or regulation intended to prevent collisions" by ships.  *Pelican Marine Carriers, Inc. v. City of Tampa*, 791 F. Supp. 845, 853 (M.D. Fla. 1992).

indicating Carnival violated any standards, statutes, and/or regulations (*see id.* 10–12).  Carnival also argues McLean is not entitled to non-pecuniary damages because the Death On the High Seas Act provides her exclusive remedy.  (*See id.* 12–14).  The Court first addresses Carnival's arguments regarding Plaitniff's various theories of negligence, and then addresses Carnival's arguments with respect to the Pennsylvania Rule and McLean's entitlement to non-pecuniary damages.

### A.  Theories of Negligence

Carnival raises several arguments regarding the allegations in McLean's negligence claim.  Carnival argues McLean "merely lists the duties that carriers might owe to passengers, but fails to allege any facts demonstrating that Carnival had notice of any alleged defect that would impose upon Carnival a duty to warn."  (Mot. 5 (emphases omitted)).  Carnival also argues McLean has merely pled a laundry list of Carnival's alleged failures in conclusory fashion, but fails to plead facts demonstrating Carnival breached any of the duties it owed to Decedent.  (*See id.* 8).  Finally, Carnival argues McLean's "negligent method of operation" allegation is not cognizable under general maritime law (*see id.* 9 (quoting Compl. ¶ 13(i))), and her allegations concerning Carnival's failure to comply with standards, statutes, and/or regulations fail to identify a particular rule or how it was violated.  (*See id.* 10).

McLean asserts the Complaint alleges a "host of facts" supporting her claim and further precision is not required under Rule 8.  (Resp. 12).  McLean also argues "Carnival's attempt to thin-slice the subparts of [her] negligence claim misses the broader point."  (*Id.* 7 (internal quotation marks omitted)).  McLean additionally presents a number of other arguments in response to Carnival's specific contentions.  The Court agrees with McLean that Carnival is taking an unnecessarily exacting position regarding McLean's burden at this stage of the case.

McLean's sole claim is for negligence on the part of Carnival. To properly plead a negligence claim, a plaintiff must allege four elements: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citation omitted). Additionally, a "complaint must only contain inferential allegations from which the court can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Gentry v. Carnival Corp.*, No. 11-21580-civ, 2011 WL 4737062, at *3 (S.D. Fla. Oct. 5, 2011) (alteration, citation, and internal quotation marks omitted).[3] In the maritime context, "'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 908 (11th Cir. 2004) (quoting *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959)). More specifically, "[a] high degree of care is demanded of common carriers toward their passengers," including "the duty to maintain reasonable, safe means for passengers to board and disembark." *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003) (citations omitted). This duty is "nondelegable" and "even the slightest negligence renders a carrier liable." *Id.* (citation and internal quotation marks omitted).

McLean asserts her Complaint advises Carnival the Splendor's gangway was unreasonably dangerous and placed at too steep of an incline. (*See* Resp. 13). McLean further states this "foreseeable condition" caused injury to Decedent while disembarking the gangway.

---

[3] A claim is governed by the federal courts' admiralty jurisdiction when "(1) it occurs on navigable waters or is caused by a vessel on navigable waters, (2) the incident has a potentially disrupting impact on maritime commerce, and (3) the general character giving rise to the incident has a substantial relationship to traditional maritime activities." *Gentry*, 2011 WL 4737062, at *1 (citations omitted). Both parties agree admiralty jurisdiction and maritime law are applicable to this negligence action. (*See* Mot. 2; Resp. 4).

(*Id.*).  McLean concludes her Complaint sufficiently alleges a negligence claim and contains "inferential allegations from which the court can identify each of the material elements necessary."  (*Id.* 6 (alteration and internal quotation marks omitted)).  McLean is correct.

McLean's negligence claim is predicated upon Carnival's duty to exercise reasonable care for Decedent's safety under the circumstances.  (*See* Compl. ¶ 12).  Such a duty is well established in general maritime law and includes a specific duty to maintain reasonable, safe means for passengers to board and disembark.  *See Chaparro*, 693 F.3d at 1336; *Vierling*, 339 F.3d at 1319.  McLean also alleges a sprawling list of Carnival's alleged breaches of its duty (*see* Compl. ¶¶ 13(a)–(t)), including breaches of the duty of safe embarkation (*see id.* ¶¶ 13(a)–(b), (d)–(e), (g), (j), (l)).  One such breach that Carnival disputes is its alleged failure to "'otherwise maintain the area and premises in a safe and reasonable manner'" because — according to Carnival — no facts are pled to support the claim.  (Mot. 8 (quoting Compl. ¶ 13(j))).  However, McLean specifically alleges the Splendor's "gangway was established in such a way that it was at a very steep incline and extremely dangerous," and "Carnival should have had personnel available to assist passengers with special needs in exiting the ship."  (Compl. ¶ 10).

As a result of Carnival's two purported failures, McLean alleges Decedent's "scooter tipped backwards and fell on top of him, causing serious, debilitating, and permanent injuries." (*Id.*).  These allegations, read in the light most favorable to McLean, *see Brooks*, 116 F.3d at 1369, sufficiently establish a negligence claim by indicating the relevant duty, how Carnival breached its duty, and how the breach proximately caused Decedent's injuries.  *See Chaparro*, 693 F.3d at 1336.  Thus, McLean alleges facts allowing the Court to draw a reasonable inference that Carnival is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

Carnival nevertheless maintains that even ordinary negligence claims require a plaintiff to allege an extra notice element.  (*See* Mot. 6–7).  Carnival asserts its duty and liability only extend to dangers the cruise line knows or reasonably should have known about.  (*See* Mot. 5–6 (citing *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322 (S.D. Fla. 2011); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *Monteleone v. Bahama Cruise Line*, 838 F.2d 63, 65 (2d Cir. 1988))).  "Where it is alleged, however, that defendant created an unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence."  *Baker v. Carnival Corp.*, No. 06-21527-civ, 2006 WL 3519093, at *3 (S.D. Fla. Dec. 6, 2006) (citing *Rockey v. Caribbean Cruise, Ltd.*, No. 99-708-civ-Gold, 2001 WL 420993, at *4–5 (S.D. Fla. Feb. 20, 2001)), *overruled on other grounds by Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323-civ, 2012 WL 920675, at *3–4 (S.D. Fla. Mar. 19, 2012).  "The question becomes whether the defendant created an unsafe or foreseeably hazardous condition."  *Id.* (citation omitted).  In the present case, McLean alleges the gangway's design and assembly — as well as Carnival's disembarkation procedures — created an unsafe or foreseeably hazardous condition.  (*See* Compl. ¶¶ 13(a)-(b), (c), (g), (j), (l), 14–15, 18).  As such, no allegation of notice is necessary to survive the Motion to Dismiss.

Although Carnival additionally challenges other theories of negligence alleged by McLean, it is unnecessary for McLean to properly allege every theory of her single negligence claim.  While certain of the alleged breaches of Carnival's duty of reasonable care may not adequately state a negligence claim, the Court will not strike the alleged breaches in line-item fashion as Carnival requests.  *See McLaren v. Celebrity Cruises, Inc.*, No. 11-23924-civ, 2012 WL 1792632, at *5 (S.D. Fla. May 16, 2012) (quoting *Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-civ, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)) (declining request to dismiss

alternative theories of negligence as the plaintiff had already properly alleged the existence of a duty).  Because McLean alleges a facially plausible claim for negligence, the Court does not address the remaining alleged breaches of Carnival's duty of care.[4]

McLean adequately states a claim of negligence, and the Complaint is not dismissed on this basis.[5]

### B. Pennsylvania Rule

Carnival also argues McLean fails to allege any facts establishing the Pennsylvania Rule applies to this case.  (*See* Mot. 4).  In response, McLean contends that while the Pennsylvania Rule might apply to the present case, it is a matter more appropriately addressed at trial or at a later point in the proceedings.  (*See* Resp. 15).

The Pennsylvania Rule provides:

[If] a ship at the time of an allision [or collision] is in actual violation of a statutory rule intended to prevent allisions [or collisions], it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster.  In such a case the burden rests upon the ship of

---

[4] Carnival argues that "a District Court may still properly dismiss subparts of claims with prejudice" and relies on *Lapidus v. NCL America, LLC*, No. 12-21183-civ, 2012 WL 2193055 (S.D. Fla. June 14, 2012), and *Mizener v. Carnival Corp.*, No. 05-22965, 2006 U.S. Dist. LEXIS 44332 (S.D. Fla. June 15, 2006), for this proposition.  (*See* Reply 5–6).  However, neither case supports Carnival's position.  In *Lapidus*, the plaintiff failed "to plead facts to support a legal duty, breach of the duty, and causation," and therefore his negligence claim was dismissed.  *Lapidus*, 2012 WL 2193055, at *3.  Despite the court dismissing certain subparts with prejudice and others without, *see id.* at *7, the court found the plaintiff had not sufficiently pled negligence based on any of his alternative theories, *see id.* at *3–4.  Here, McLean sufficiently pleads facts to support a single-count negligence claim on at least one of her theories of liability; consequently, it is unnecessary to determine if the other theories survive at this stage of the litigation.  *See McLaren*, 2012 WL 1792632, at *5.  Carnival's reliance on *Mizener* is similarly misguided as the plaintiff in *Mizener* also failed to sufficiently allege any viable theory of negligence.  *See Mizener*, 2006 U.S. Dist. LEXIS 44332, at *10.

[5] Carnival makes two additional arguments in support of its Motion.  First, Carnival maintains McLean's Response impermissibly amended the Complaint by asserting a higher duty of care for passenger disembarkation than is alleged in the Complaint.  (*See* Reply 3).  Carnival also contends McLean's Response amended the Complaint by alleging several passengers' requests for additional assistance from crewmembers went unheeded while Decedent was disembarking.  (*See* Reply 4).  It is unnecessary to address these arguments to resolve the Motion.

showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

*Superior Const. Co., Inc. v. Brock*, 445 F.3d 1334, 1340 (11th Cir. 2006) (alterations added) (quoting *The Pennsylvania*, 86 U.S. 125, 136 (1873)). "The *Pennsylvania* Rule is not a rule of liability, but shifts the burden of proof as to causation." *Id.* (citation and internal quotation marks omitted).

Carnival argues McLean fails to allege the specific statutory rule violated or the occurrence of a collision. (*See* Mot. 5). This argument does not persuade, as the negligence claim does not depend on the application of the Pennsylvania Rule, and the Pennsylvania Rule's applicability is more properly considered at a later stage of the proceedings. *See* Order Denying Motion to Dismiss, *Scouten v. NCL*, No. 08-21485-civ-Moreno (S.D. Fla. Mar. 3, 2009), at *4 [ECF No. 58]. In *Scouten*, the court denied a motion to dismiss a complaint involving a cruise ship passenger's injury while boarding a ship. *See id.* at *1, 9. The court also declined to grant the defendant's alternative request to strike the specific paragraphs of the complaint invoking the Pennsylvania Rule. *See id.* at *4–5. Notwithstanding the court's acknowledgment that "a collision or allision could *plausibly* have been a contributory cause of [the decedent's] injuries," the court found it was premature to determine the applicability of the Pennsylvania Rule at that stage of the litigation. *See id.* at *4 (emphasis in original) ("More importantly, the Court finds it premature to strike those paragraphs in the Second Amended Complaint that invoke the Pennsylvania Rule.").

As in *Scouten*, McLean "makes out a claim for negligence, and the Pennsylvania Rule would merely shift the burden of proof at trial." *Id.* at *4–5. As such, "[t]he Court can evaluate the applicability of the Pennsylvania Rule at a later stage," *id.* at *5, and it has no bearing on Mclean's other allegations which sufficiently state a negligence claim.

### C.  Non-Pecuniary Damages

Carnival argues the Death on the High Seas Act, 46 U.S.C. § 30301–30308 ("the DOHSA"), is McLean's exclusive remedy and precludes recovery of non-pecuniary damages. McLean disputes the DOHSA's applicability and asserts Decedent's injuries did not cause his death.  Preliminarily, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to 'claims,' not to requests for a certain type of damages that are 'merely the relief demanded as part of a claim.'"  *Option Wireless, Ltd. v. OpenPeak, Inc.*, No. 12-80165, 2012 WL 6045936, at *2 n.4 (S.D. Fla. Dec. 5, 2012) (quoting *Hutchings v. Fed. Ins. Co.*, No. 6:08–cv–305–orl–19krs, 2008 WL 4186994, at *1 (M.D. Fla. Sept. 8, 2008)).  Therefore, Carnival's request is more appropriately considered as a motion to strike pursuant to Rule 12(f), and the Court will exercise its discretion to treat the improperly labeled motion to dismiss as a motion to strike on these same grounds.  *Cf. id.* ("The Court does not exercise this authority, however, and construes the . . . motion as labeled.").

The DOHSA expressly creates a maritime law cause of action and provides:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible.  The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302.  The amount and apportionment of recovery is limited to "a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought."  *Id.* § 30303.  "The court shall apportion the recovery among those individuals in proportion to the loss each has sustained."  *Id.*

"[T]he explicit use of the term pecuniary loss implie[s] that nonpecuniary damages [a]re not available under [the] DOHSA."  *Tucker v. Fearn*, 333 F.3d 1216, 1220 (11th Cir. 2003)

(alterations added; internal quotation marks omitted) (citing *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 619–20 (1978)).  The Supreme Court has broadly determined, "By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas."[6]  *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 123 (1998).  Thus, where the DOHSA applies, general maritime law cannot provide a basis for recovery of non-pecuniary damages.  *See id.* at 120.  Additionally, the Supreme Court has specifically precluded recovery of damages for loss of society, *see id.*, or a decedent's pre-death pain and suffering, *see id.* at 124 ("Because Congress has chosen not to authorize a survival action for a decedent's pre-death pain and suffering, there can be no general maritime survival action for such damages.").

McLean acknowledges the DOHSA precludes recovery for non-pecuniary damages, but argues the DOHSA is not applicable as she is not alleging the injuries sustained in the accident caused Decedent's death.  (*See* Resp. 7–8).  McLean further argues Decedent's "injuries along with the medical treatment for those injuries resulted in a deterioration of [his] overall health, and the deterioration of his overall health caused in[sic] his death."  (*Id.* at 8).  McLean asserts Decedent's actual cause of death was cardiopulmonary arrest.  (*See id.*).  However, McLean's single-count negligence Complaint only alleges liability on the part of Carnival (as owner of the Splendor) and plainly attributes the negligence as a cause of Decedent's death.

Here, Plaintiff references the death of Decedent in various parts of the Complaint. McLean alleges, "As a result of [Decedent's] injury, and his subsequent medical treatment, his overall health dramatically declined and he died on April 29, 2012," and "his health deteriorated

---

[6] Plaintiff does not challenge the applicability of the DOHSA with respect to whether the vessel was on the high seas.  Indeed, vessels that are in foreign waters qualify as being upon the high seas.  *See Ridley v. NCL (Bahamas) Ltd.*, 824 F. Supp. 2d 1355, 1359 (S.D. Fla. 2010) ("The Eleventh Circuit has consistently interpreted [the] DOHSA as applying to maritime incidents occurring within the territorial waters of foreign states.") (citations omitted).

so badly as a result of his injuries and subsequent treatment that he died as a result." (Compl. ¶¶ 10, 20). Additionally, McLean "demands Judgment against the Defendant for damages suffered as a result of [Decedent's] bodily injury . . . [including] loss of life." (Compl. 9). Even taking the Complaint in the light most favorable to the Plaintiff, *see Brooks*, 116 F.3d at 1369, McLean alleges Decedent's death was caused by neglect occurring on the high seas. As such, the provisions for a cause of action under the DOHSA govern the claim. *See Lasky v. Royal Caribbean Cruises, Ltd.*, 850 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012) ("Moreover, a cause of action under [the] DOHSA accrues at the time and place where an allegedly wrongful act or omission was consummated in an actual injury, not at the point where previous or subsequent negligence allegedly occurred. Put another way, the right to recover for death depends upon the law of the place of the act or omission that caused it *and not upon that of the place where the death occurred.*" (emphasis in original) (citations, alteration, and internal quotation marks omitted)).

*Lasky* is factually analogous. There, the decedent was walking in his suite aboard a cruise vessel when he fell and hit his head. *See Lasky*, 850 F. Supp. 2d at 1311. On the day of his accident, the vessel was in the waters of Cozumel Mexico or "otherwise at sea." *Id.* Although the decedent suffered a fractured neck, the decedent's condition began to deteriorate and he died about a month later. *See id.* The court held the DOHSA applied because the cause of action accrued where the negligent act "was consummated in an actual injury, not at the point where previous or subsequent negligence allegedly occurred." *Id.* at 1312 (citations omitted). Like in *Lasky*, McLean alleges a claim for negligence which occurred while in the territorial waters of Mexico. Although Decedent died four months later, and McLean alleges there may

13

have been subsequent negligence in Decedent's medical treatment, the DOHSA preempts any other cause of action brought under general maritime law. *See id.*[7]

The applicability of the DOHSA is properly determined at this early stage of the case, as it "will prevent unnecessary litigation in the event that [the] DOHSA applies." *Balachander v. NCL (Bahamas) Ltd.*, 800 F. Supp. 2d 1196, 1201 (S.D. Fla. 2011) (citations and internal quotation marks omitted). As a result of the DOHSA's applicability, McLean is limited to fair compensation for the pecuniary loss sustained by Decedent's spouse, parent, children, or dependent relatives. *See* 46 U.S.C. §§ 30302, 30303. McLean's request for damages for pain and suffering, or other non-pecuniary damages, is prohibited as a matter of law as Congress has "spoken on the availability of a survival action" in cases of death on the high seas. *Dooley*, 524 U.S. at 124. Accordingly, the portions of McLean's Complaint seeking non-pecuniary damage are stricken as "immaterial" to her negligence count under the DOHSA. *See* Fed. R. Civ. P. 12(f).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss **[ECF No. 19-1]** is **GRANTED in part** as follows:

1. The Motion to Dismiss is **DENIED**.

2. The portion of the Motion to Dismiss construed as a motion to strike Plaintiff's request for non-pecuniary damages is **GRANTED**. Plaintiff's requests for non-pecuniary damages are hereby stricken.

---

[7] Although *Lasky* was decided on a motion for summary judgment, the plaintiff never filed a response to the motion and the court noted "for the purposes of resolving the issues raised in Defendant's motion, there are no disputed issues of material fact." *Lasky*, 850 F. Supp. 2d at 1310 n.2. The rulings were made as a matter of law.

CASE NO. 12-24295-CIV-ALTONAGA

**DONE AND ORDERED** in Miami, Florida, this 14th day of March, 2013.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

15